# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MSPA CLAIMS 1, LLC,**

      **Plaintiff,**

**v.**                                                                           Case No: 6:17-cv-1790-Orl-31DCI

**HALIFAX HEALTH, INC,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 16) filed by the Defendant, Halifax Hospital Medical Center[1] (henceforth, "Halifax"), the response in opposition (Doc. 29) filed by the Plaintiff, MSPA Claims 1, LLC ("MSPAC"), and the reply (Doc. 134) filed by Halifax.

### I. Background

According to the allegations of the Complaint (Doc. 1-1 at 8-30) in this purported class action, which are accepted in pertinent part as true for purposes of resolving this motion, MSPAC is the assignee of Florida Healthcare Plus, Inc. ("FHPI"), a Medicare Advantage Organization ("MAO"). In May of 2013, one of FHPI's enrollees – whose name is being kept confidential – received medical items and services at the hospital operated by Halifax. (Complaint at 17-18). Halifax billed and received payment for those items and services from both FHPI and from 21st Century Preferred Insurance Company ("21st Century"), which was primarily liable. (Complaint

---

[1] Although the case caption reads "Halifax Health, Inc.", the Defendant contends (and the Plaintiff does not dispute) that its correct name is "Halifax Hospital Medical Center d/b/a Halifax Health." (Doc. 16 at 1)

at 18). 21st Century, which was the enrollee's no-fault PIP insurer, paid $10,000 to Halifax on November 6, 2013. (Complaint at 18). FHPI paid the full amount of its enrollee's charges – $31,722.23 – to Halifax on December 16, 2013, rather than the $21,722.23 remaining after 21st Century's payment. (Complaint at 18). On May 12, 2014, Halifax sent a reimbursement check to MSPAC for $9,750.[2] (Complaint at 18).

On January 3, 2017, MSPAC filed this suit in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. (Doc. 1 at 1). On February 23, 2017, the case was removed to the United States District Court for the Southern District of Florida. (Doc. 1). On October 16, 2017, pursuant to Halifax's motion, the case was transferred to this Court.

In Count I of the Complaint, MSPAC asserts a claim under 42 U.S.C. § 1395y(b)(3)(A), the Medicare Secondary Payer ("MSP") Act's private cause of action, alleging that Halifax violated the Act by failing to reimburse it within 60 days of FHPI's payment. (Complaint at 26). MSPAC seeks to recover double the amount that it was entitled to receive in reimbursement – *i.e.*, $20,000 – subject to a setoff for the $9,750 eventually paid by Halifax. (Complaint at 27). Based on these same allegations, MSPAC also asserts a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201 *et seq.* (Count II) and one for unjust enrichment (Count III). By way of the instant motion, Halifax seeks dismissal of all three counts.[3]

---

[2] Halifax retained $250 as an "administrative fee" and continues to do so despite a demand from MSPAC. (Complaint at 18).

[3] Halifax also challenges MSPAC's entitlement to maintain this matter as a class action. The Court declines to consider these arguments at this stage of the proceedings. In addition, Halifax raises, in its reply, an argument that MSPAC was not assigned the state law claims it asserts in counts II and III, and therefore it lacks standing. (Doc. 34 at 9). Because MSPAC has not had an opportunity to address this argument, the Court will not consider it in this opinion.

## II. Legal Standards

### A. Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."

*Id*. at 1949 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     Medicare as Secondary Payer

Originally, Medicare paid for all medical treatment within its scope and left private insurers to pick up whatever expenses remained. *See Humana Medical Plan, Inc. v. Western Heritage Insurance Company*, 832 F.3d 1229, 1234 (11th Cir. 2016). In 1980, in an effort to curb the rising costs of Medicare, Congress enacted the MSP Act, 42 U.S.C. § 1395y(b), which made other insurers covering the same treatment the primary payers and Medicare the secondary payer. *Id.*

To accomplish this, 42 U.S.C. § 1395y(b)(2)(A) forbids Medicare from making payments – with one exception – for any item or service when payment has been made (or can reasonably be expected to be made) by another form of insurance, such as a group health plan, worker's compensation law, or automobile insurance. (These other forms of insurance are referred to as "primary plans." 42 U.S.C. § 1395y(b)(2)(A).) The one exception is found in 42 U.S.C. § 1395y(b)(2)(B), which authorizes Medicare to make a "conditional payment" if a primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly". Any such payments are "conditioned on reimbursement" to Medicare. 42 U.S.C. § 1395y(b)(2)(B)(i). A primary plan – and an entity that receives payment from a primary plan – must reimburse Medicare for any conditional payment "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(i).

> To facilitate recovery of conditional payments, the MSP provides for a government action against any entity that was responsible for payment under a primary plan, 42 U.S.C. § 1395y(b)(2)(B)(iii), and subrogates the United States to the rights of a Medicare beneficiary to collect payment under a primary plan for items already paid by Medicare, § 1395y(b)(2)(B)(iv). The MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights. See § 1395y(b)(3)(A).

*Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006).

### C. MAOs

Parts A and B of the Medicare Act are fee-for-service provisions that entitle eligible persons to have the Center for Medicare and Medicaid Services ("CMS") directly pay medical providers for their hospital and outpatient care. Under Part C – the Medicare Advantage program – Medicare-eligible individuals may elect to have an MAO (rather than CMS) provide Medicare benefits. *See Western Heritage* at 1235. An MAO is a private insurance company that administers the provision of Medicare benefits pursuant to a contract with CMS. *Id.*

### III. Analysis

### A. Count I

A provision of Medicare Part C titled "Organization as secondary payer" provides that

> Notwithstanding any other provision of law, a Medicare [Advantage] organization may (in the case of the provision of items and services to an individual under a Medicare [Advantage] plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services

- 5 -

42 U.S.C. § 1395w-22(a)(4). Some MAOs have argued that this provision creates an implied federal cause of action to recover secondary payments, but courts have repeatedly rejected this argument. *See Western Heritage*, 832 F.3d at 1235. Instead, courts have held that this provision simply sets forth when MAO coverage is secondary to other coverage. *Id.*

In *Western Heritage*, however, the United States Court of Appeals for the Eleventh Circuit held that MAOs may sue under the MSP Act's private cause of action, 42 U.S.C. § 1395y(b)(3)(A), which provides as follows:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

*Id.* at 1238.

In Count I, MSPAC asserts a double-damages claim under the MSP private cause of action. Halifax seeks dismissal on the grounds that MSPAC can only proceed under 42 U.S.C. § 1395y(b)(3)(A) against a primary plan, not a provider such as Halifax.[4] MSPAC responds that a claim under the MSP private cause of action can "unequivocally" be brought against providers. (Doc. 29 at 3). In support, however, MSP cites to portions of the MSP Act, federal regulations, and judicial opinions holding that Medicare – and, by extension, MAOs such as FHPI – are entitled to reimbursement from the recipients of payments made by a primary payer. For

---

[4] Halifax describes the issue as one of standing – *i.e.,* that MSPAC lacks standing to raise a claim under this cause of action. (Doc. 16 at 10). But the doctrine of standing focuses on the injury suffered by the plaintiff rather than the identity of the defendant. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed. 2d 351 (1992) (defining "irreducible constitutional minimum of standing" as consisting of "injury in fact" to plaintiff, a "causal connection between the injury and the conduct complained of," and a likelihood "that the injury will be redressed by a favorable decision."). Halifax's argument in regard to Count I is based on the fact that it is not a primary plan, rather than anything regarding MSPAC's injury, and therefore the Court will not treat it as an argument about standing.

example, MSPAC quotes a portion of the MSP Act stating that a "primary plan, <u>and an entity that receives payment from a primary plan</u>, shall reimburse" Medicare for any payment "with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii)) (emphasis added). But the issue here is not FHPI's right to reimbursement; the issue is whether FHPI's assignee can pursue that right via the MSP Act's private right of action. By its terms, that right of action only applies to primary plans. MSPAC offers no argument as to why it should also apply to entities, such as Halifax, that receive payment from primary plans. Count I will therefore be dismissed.[5]

### B. Preemption

Halifax argues that MSPAC's state law claims for reimbursement in counts II and III are preempted because the MSP Act governs the reimbursement of overpayments. (Doc. 16 at 20). However, Halifax does not cite to any case law so holding[6] or provide any other support for this contention. The Court's research has not uncovered any cases holding that the MSP Act preempts any state law claims for reimbursement. Accordingly, the Court rejects this argument.

---

[5] In the alternative, Halifax had argued that FHPI's $10,000 overpayment was not a conditional payment, and therefore was not one for which a remedy would be available under the MSP Act, because that act bars MAOs from making payments where "payment has been made or can reasonably be expected to be made" by a primary payer such as 21st Century – which, in this case, had already paid the $10,000. Because the Court concludes that MSPAC cannot proceed under its chosen cause of action in Count I, it does not reach this argument.

[6] Halifax cites to *Western Heritage* for this proposition, but the passage it cites to is merely a recitation of the proceedings in an earlier state court case addressing a different issue. *Id.* at 1232. The *Western Heritage* court did not itself address preemption. Halifax also cites to *United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 622–23 (1st Cir. 1996) on this point, but that court was considering whether a state law that purported to make Medicare, rather than a state insolvency fund, the primary payer was preempted by the MSP Act. In the instant case, there is no allegation that allowing MAOs to seek reimbursement under state law runs counter to the intent of Congress in passing the MSP Act.

### C. Count II -- FDUTPA

FDUTPA creates a private right of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. Halifax argues that the conduct impliedly alleged by MSPAC – essentially, double billing – falls outside the boundary of "the conduct of trade or commerce" as required by the statute. Under FDUTPA, "trade or commerce" is defined as

> the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

Fla. Stat. § 501.203(8). In support, Halifax cites to cases that have held that certain activities such as debt collection were not, themselves, "trade or commerce" for purposes of FDUTPA. *See, e.g.*, *State v. Shapiro & Fishman, LLP*, 59 So. 3d 353, 357 (holding that processing of foreclosure cases was not "trade or commerce" under FDUTPA).

In response, MSPAC cites to cases holding that a defendant's improper billing practices can constitute trade or commerce under the Act. *See Alhassid v. Bank of America, N.A.,* 60 F. Supp. 3d 1302, 1324 (S.D. Fla. 2014) (holding that loan servicer that billed borrowers for services it had not performed was engaged in "trade or commerce" for purposes of FDUTPA; if borrowers had only alleged improper loan collection activities, definition would not have been met). *See also James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 642 F.Supp.2d 1318 (M.D. Fla. 2009) (inflated repair bill sent by telecom to entity that severed its cable could support FDUTPA claim because maintenance and repair of underground cables "would seem to be an integral part of" its businesses and therefore met "trade or commerce" requirement).

In the instant case, the Plaintiff has alleged that Halifax double billed FHPI and 21st Century for the services provided – as opposed to, for example, an allegation that Halifax engaged in improper practices while attempting to collect someone else's debt. As such, the Court finds that Halifax's alleged conduct falls within the FDUTPA definition of "trade or commerce." The motion will be denied as to Count II.

### D. Count III – Unjust Enrichment

The elements of a claim for unjust enrichment under Florida law are: (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant accepted and retained the benefit; and (3) under the circumstances it would be inequitable for the defendant to retain the benefit without paying for it. *Duncan v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. 5th DCA 2002). Halifax contends that Florida law recognizes a distinction between "wrongful enrichment" and "unjust enrichment," and what MSPAC is seeking falls into the former category and must be dismissed.

In *Flint v. ABB, Inc.*, 337 F.3d 1326 (11th Cir. 2003), the Eleventh Circuit Court of Appeals described the distinction as follows:

> An unjust enrichment occurs when the defendant holds something that belongs to the plaintiff or receives, without legal cause, a transfer of goods or services from the plaintiff. The law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts. When the plaintiff relies on a breach of contract to supply the "unjustness" of the defendant's holdings, the right on which he or she relies arises from the breach of contract, not from an unjust enrichment; analogously, when the plaintiff relies on a wrong to supply the "unjust factor," the causative event is a wrongful enrichment rather than an unjust enrichment. *See* Peter Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 Texas L.Rev. 1767, 1783 (2001).

*Id.* at 1330 n.2. *See also Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D.Fla. 2005) (rejecting unjust enrichment claim based on alleged RICO violations and theft as claim for wrongful enrichment).

MSPAC responds that *Flint*, *Tenet Healthcare*, and the other cases cited by Halifax are "based exclusively on a single Texas law review article lacking any foundation in Florida law." (Doc. 29 at 13). MSPAC is only partially correct. The cases cited by Halifax do indeed rely on the Birks article (or on cases that rely on it). However, while that article was published in a Texas law review, it is national in scope, citing to various Restatements and to English civil law, not decisions of Texas courts. *See id.*

With that said, this Court previously declined to recognize the distinction between unjust and wrongful enrichment on the grounds that no Florida court has ever done so. *See State Farm Fire & Cas. Co. v. Silver Star Health and Rehab, Inc.*, 2011 WL 6338496, at *6 (M.D.Fla. December 19, 2011). In the instant case, the Court finds that it need not consider whether to recognize the distinction, because MSPAC has not explicitly alleged that Halifax engaged in wrongful conduct here.

As noted above, MSPAC alleges that Halifax billed and received payment from both FHPI and from 21st Century for the treatment provided to FHPI's enrollee. (Complaint at 18). MSPAC never explicitly alleges that Halifax billed FHPI for the entire cost of the treatment even after 21st Century paid the first $10,000. In analyzing whether MSPAC stated a claim under FDUTPA, which requires unfair or deceptive conduct, the Court drew an inference from these allegations that FHPI was a victim of double billing. However, in the absence of that inference, MSPAC's allegations can be read as simply asserting that FHPI made a mistaken overpayment for

which Halifax has refused to make a full reimbursement. Such allegations state a claim for unjust enrichment.

Accordingly the motion will be denied as to Count III.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 16) is **GRANTED IN PART AND DENIED IN PART**.   Count I is **DISMISSED WITH PREJUDICE**.   In all other respects, the motion is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 2, 2018.

							    _____
							    GREGORY A. PRESNELL
							    UNITED STATES DISTRICT JUDGE